UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD D. MEDINA,

                         Plaintiff,

v.                                      9:06-CV-0346
                                      (LEK/GHL)

GEORGE E. PATAKI, Governor,
State of New York,

                          Defendant.
_____

APPEARANCES:                      OF COUNSEL:

RICHARD D. MEDINA, 04-A-5059
  Plaintiff, *Pro Se*
Jefferson Correctional Facility
753 Watertown Drive, West
Watertown, NY 13601

HON. ANDREW M. CUOMO          JAIME IRENE ROTH, ESQ.
Attorney General for the State of New York    Assistant Attorney General
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This action has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. §

636(b).  Richard D. Medina ("Plaintiff") commenced this *pro se* action pursuant to 42 U.S.C. §

1983 while he was an inmate at Groveland Correctional Facility in Sonyea, New York.

Generally, Plaintiff alleges that former Governor George E. Pataki ("Defendant") has violated, or

will violate, his rights under the First, Fifth and Fourteenth Amendments to the United States

Constitution, and Articles 3, 5, 7, 19, and 20 of the United Nation's "Universal Declaration of Human Rights," by requiring him to comply with N.Y. Correct. Law §§ 168 to 168-w (McKinney 2003), known as New York State's Sex Offender Registration Act (or "SORA"), when he is released from incarceration.  (Dkt. No. 1 [Plf.'s Compl.].)  Currently pending before the Court are Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. No. 4),[1] and Defendant's cross-motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 13).  For the reasons that follow, I recommend that Defendant's cross-motion be granted and that Plaintiff's motion be denied.

## I.      RELEVANT PROCEDURAL BACKGROUND

On August 10, 2006, Defendant opposed Plaintiff's motion, and cross-moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Plaintiff failed to state a claim upon which relief may be granted.  (Dkt. Nos. 13, 14.) Plaintiff did not respond.

In light of the special leniency normally afforded to *pro se* civil rights litigants, on January 30, 2007, the Court filed, and attempted to serve on Plaintiff, an Order (1) reminding Plaintiff that he had not yet responded to Defendant's cross-motion to dismiss, (2) granting Plaintiff an extension until February 20, 2007, in which to file such a response, and (3) advising Plaintiff that, if he does not submit a response, the Court will entertain Defendant's cross-motion without the benefit of Plaintiff's arguments, and that, if Defendant's cross-motion is granted, Plaintiff's Complaint will be dismissed.  (Dkt. No. 18.)  The Court also attempted to serve on Plaintiff a courtesy copy of Defendant's papers in support of the cross-motion to dismiss.  (*Id.*)

---

[1]          (*See also* Dkt. No. 1, ¶¶ 9[B], [C] [Plf.'s Compl., requesting injunctive relief].)

However, on February 7, 2007, that Order and courtesy copy of Defendant's motion papers were returned to the Clerk's Office as undeliverable.  (Dkt. No. 19.)

Based on a subsequent *sua sponte* review of the New York State DOCS' "Inmate Lookup" Service, it *appears* that, on January 25, 2007, Plaintiff was incarcerated at the Franklin Correctional Facility.  *See* New York State DOCS "Inmate Lookup" http://nysdocslookup.docs. state.ny.us/GCA00P00/WIQ3/WINQ130 (last visited March 7, 2997).  While I will instruct the Clerk's Office to attempt to serve a copy of this Report-Recommendation on Plaintiff at Franklin Correctional Facility (in addition to his address of record in this action, i.e., Jefferson Correctional Facility), I decline to delay resolution of Plaintiff's motion and Defendant's pending cross-motion any longer.  It is not the Court's duty to locate Plaintiff.  Rather, it is Plaintiff's duty to diligently litigate this action, and to keep the Court notified of his current address.[2]

## II.    LEGAL STANDARD UNDER RULE 12(b)(6)

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To prevail on such a motion, the defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief."  *Conley v.*

---

[2]    *See* Fed. R. Civ. P. 41(b) (imposing on plaintiffs a duty to prosecute an action); N.D.N.Y. L.R. 41.2(a) ("[T]he plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution."); N.D.N.Y. L.R. 10.1(b)(2) (imposing on plaintiffs a duty to **"immediately notify the Court of any change of address"**) [emphasis in original]. (*See also* Dkt. No. 5 at 6 [Order of Judge Kahn dated 4/18/06, specifically directing Plaintiff to "**promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address**"] [emphasis in original].)

*Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted).[3]  A defendant may base this motion on

either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule

8(a)(2);[4] or (2) a challenge to the legal cognizability of the claim.[5]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

---

[3]       *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

[4]       *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[5]       *See Swierkiewicz*, 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[6] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47).[7]  The purpose of this rule is to "facilitate a proper decision on the merits."  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).[8]

---

[6]     *See Swierkiewicz*, 534 U.S. at 511-512, 515.

[7]     *See also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[8]     Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]); *U.S. v. Casado*, 303 F.3d 440, 449 n.5 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *U.S. v. Terry*, 927 F.2d 593 [2d Cir. 1991]); *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 114 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *Zitz v. Pereira*, 225 F.3d 646 [2d Cir. 2000]); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 57 (2d Cir. 2001) (citing, for similar purpose, unpublished table opinion of *Herman Miller, Inc. v. Worth Capitol*, 173 F.3d 844 [2d Cir. 1999]); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 895 F.2d 1410 [2d Cir. 1989]); *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 586 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *Planned Parenthood Fed'n of Am. v. Bucci*, 152 F.3d 920 [2d Cir.

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g., Dura Pharm.*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord, Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).[9]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted). "This standard is applied with even greater force where the

---

1998]).

[9]      Several other decisions exist from the Second Circuit affirming the Rule 12(b)(6) dismissal of a complaint due to its insufficiency under Rule 8(a)(2) after *Swierkiewicz*. *See, e.g., Johnson v. U.S.*, No. 03-6054, 2003 WL 22849896, at *1 (2d Cir. Dec. 2, 2003) (relying on pre-*Swierkiewicz* decision by the Second Circuit applying Rule 8[a] and Rule 12[b][6]); *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, I cite them because they clearly acknowledge the continued precedential effect, after *Swierkiewicz*, of cases from within the Second Circuit interpreting Rules 12(b)(6) and 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Hernandez*, 18 F.3d at 136 (citation omitted).[10]  Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).[11]

Finally, when addressing a *pro se* complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).[12]  Of course, an opportunity to replead should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

---

[10]     *See also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (affirming dismissal under Rule 12[b][6]) (internal quotations and citation omitted).

[11]     Of course, the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord*, *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[12]     *See also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

### III.   APPLICATION OF LEGAL STANDARD UNDER RULE 12(b)(6)

Generally, Defendant presents three arguments in favor of his cross-motion to dismiss:

(1) that, to the extent Plaintiff's claim against Defendant is premised on the *enactment* of SORA,

Defendant is shielded from liability by the doctrine of absolute legislative immunity, and that, to

the extent Plaintiff's claim against Defendant is premised on the *enforcement* of SORA, Plaintiff

has failed to allege facts indicating that it was Defendant (and not the State of New York) who

was the real party in interest, and facts indicating that Defendant was (or will be) personally

involved in the alleged constitutional violations; (2) Plaintiff has not alleged facts indicating the

fulfillment of any of the requirements for a preliminary injunction; and (3) Plaintiff has failed to

allege facts indicating a violation of the First, Fifth or Fourteenth Amendments, or the United

Nation's "Universal Declaration of Human Rights."  (*See* Dkt. No. 14, at 1-12 [Def.'s Mem. of

Law].)

### A.   Claims Asserted Under First, Fifth and Fourteenth Amendments, and the United Nation's "Universal Declaration of Human Rights"

#### 1.   Claim Under First Amendment

In his Complaint, Plaintiff asserts a Section 1983 claim premised on a violation of his

rights to "Freedom of Assembly and Association, freedom of Speech and of the Press, and

Freedom of Religion," under the First Amendment.  (Dkt. No. 1, ¶¶ 48-71 [Plf.'s Compl.].)

More specifically, Plaintiff alleges that his aforementioned First Amendment rights will be

violated when he is required by SORA to (1) appear at a law enforcement agency and register his

residence each time he changes that residence, and/or register his enrollment at a public or

private institution of higher learning each time he enrolls in such an institution, (2) pay ten

dollars each time he registers a new address.  (*Id.*)

Defendant argues that this claim fails as a matter of law because (1) the controversy upon which it is founded is not a justiciable "case or controversy" (under Article III of the United States Constitution) in that Plaintiff has not yet experienced the theoretical harms in question (which occur only after due process is given to Plaintiff and which, in any event, do not occur until ten days prior to release from incarceration), (2) the harms are too minimal to implicate the protections of the First Amendment, and (3) Plaintiff's allegations only conclusorily assert that the harms in question somehow inhibit his ability to freely exercise his religion, freely speak, or peaceably assemble.  (Dkt. No. 14 at 1-2, 6-8, 11-12 [Def.'s Mem. of Law].)

I am persuaded by Defendant's first argument.  SORA does not require sex offenders to register with the Division of Criminal Justice Services until "ten calendar days prior to discharge, parole, release to post-release supervision or release from any state or local correctional facility, hospital or institution where he or she was confined or committed."  N.Y. Correct. Law § 168-f(1).[13]  Here, Plaintiff has not yet experienced any harms from SORA's application.  His Complaint does not allege facts indicating that the public has yet been notified of Plaintiff's status as a convicted sex offender.  Nor does the Complaint allege facts indicating that he has been judicially classified as a sex offender in the applicable risk category (i.e., "level one," "level two," or "level three").  Nor does the Complaint allege facts indicating that he has even been required to register with the Division of Criminal Justice Services.  Courts have dismissed such

---

[13]      Here, Plaintiff's Complaint does not allege that, as of the date of the signing of that Complaint (March 15, 2006), Plaintiff had been either released from prison or required to register with the Division of Criminal Justice Services.  (Dkt. No. 1 [Plf.'s Compl.].)  Indeed, Plaintiff's Complaint appears to acknowledge that Plaintiff would not be subjected to SORA until ten days before his release from prison.  (*See, e.g., id.* at ¶¶ 16, 22, 33-36, 40-41.)

claims under similar or analogous circumstances.  *See, e.g., People v. Griffin*, 652 N.Y.S.2d 922,

926, n.3 (N.Y. Sup. Ct., New York County 1996) (challenge to SORA was not ripe for

consideration since "[t]he notification provisions are not triggered until registration is complete

and a judicial determination is made as to defendant's risk level").[14]

The sole case applying New York law that I have found entertaining such a speculative

claim--*Doe v. Pataki*, 3 F. Supp.2d 456 (S.D.N.Y. 1998)--is distinguishable from the present

case.  In *Doe v. Pataki*, the existing plaintiffs (all of whom were convicted sex offenders who had

already been "classified" under SORA) filed a motion for leave to amend their complaint "to add

an additional class of plaintiffs, comprised of individuals who . . . *will* be released from custody

and assigned risk level classifications at judicial hearings pursuant to § 168-n of the Act (the

'Proposed Additional class')."  *Doe*, 3 F. Supp.2d at 459 [emphasis added].  Among the four

representatives of the Proposed Additional class was one "William Woe," who was, as of the

date of the decision (May 7, 1998), incarcerated in state prison and eligible for conditional

release or parole in early 1999.  *Id*. at 465.  Thus, Mr. Woe had not yet been judicially

"classified" in the applicable risk category under SORA.  *Id*.  However, the court granted the

---

[14]    *See also Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1247-1251 (3d Cir. 1996) (challenge to notification requirement of Megan's Law was not ripe); *Wagner v. Marshall*, 06-CV-0730, 2006 WL 2766146, at *2 (M.D. Ala. Sept. 25, 2006) ("Because Wagner is not scheduled for release from confinement at this time, he has failed to set forth a claim which demonstrates that he has suffered an injury from the Alabama Community Notification Act."); *Trahan v. Cornyn*, 02-CV-0299, 2003 WL 22076478, at *2 (N.D. Tex. March 19, 2003) ("Plaintiff has not yet been required to register and does not indicate he has failed to register in the past or suffered a penalty for any such failure.  There is no certitude that plaintiff will ever be subjected to the current statutory requirements; and, for that reason, plaintiff's claim is not ripe."); *Rodriguez v. State*, 71 S.W.3d 800, 803 (Tex. Ct. App. 2002) ("[B]ecause Rodriguez has not yet been required to register [as a sex offender] or suffer any penalty for failing to register, and because it is uncertain that Rodriguez will ever be subjected to the current statutory requirements, his constitutional claim is unripe and we may not review it.").

motion to amend.  *Id*. at 474.

There are two problems with relying on *Doe v. Pataki* for the proposition that even plaintiffs who have not been "classified" under SORA have standing to challenge SORA.  First, it is not entirely clear from the decision that the Southern District indeed granted the plaintiffs leave to add the claim of Mr. Woe; if the court did so, it appears to have done so only because Mr. Woe was part of an uncertified class represented by three other plaintiffs who had already been "classified" under SORA (i.e., Samuel Poe, Charles Coe, and Frank Loe).  *See Doe*, 3 F. Supp.2d at 459-460, 464-465, 474 ("The motion for leave to amend the complaint is granted. Plaintiffs are hereby granted leave to amend the complaint to add the claims of those *who have been judicially classified* and to add the *three proposed representative plaintiffs* as named plaintiffs in this action.") [emphasis added].[15]  Second, futility because of lack of standing or ripeness was not among the three grounds asserted by the defendants in opposition to the plaintiffs' motion to amend.  *Id*. at 474 (stating that the three grounds were that "the due process claims were not conducive to a class action; delay; and prejudice").  Thus, the Southern District in *Doe v. Pataki* did not address the issue presented in the current action.

In the alternative, I am persuaded by Defendant's third argument.  Even assuming that Plaintiff has alleged facts indicating the existence of a justiciable controversy, Plaintiff's Complaint alleges no facts indicating any *causal connection* between the harms in question and

---

[15]     *See* 6A Fed. Proc. § 12:57 & nn. 8-9 (2006) ("Since each member of the class need not be ascertainable at the time of the bringing of the class action, a class action dealing with an ever-changing class will not be defeated by the loss of some members and the entry of others.") [citations omitted]; *Baird v. Lynch*, 390 F. Supp. 740, 746-747 (D. Wis. 1974) (where a named plaintiff demonstrates standing to assert a claim, it is not necessary that any of the other members of the class show that they have standing) [citations omitted].

the prohibition of his ability to freely exercise his religion, freely speak, or peaceably assemble.[16]

Nor do I believe that, even if Plaintiff had alleged such facts, such allegations would state a claim

under the First Amendment.  *See People v. Wing Dong Moi*, 801 N.Y.S.2d 780, 2005 WL

1618124, at *7-8 (N.Y. Sup. Ct., Westchester County, June 3, 2005) ("To the extent that the

defendant herein alleges his right of Freedom of Association has been infringed by SORA, the

court disagrees with the assertion that one's right to Freedom of Association is implicated by

SORA's registration requirements.") [citations omitted].[17]  Finally, because these defects in

Plaintiff's lengthy and detailed Complaint appear to be substantive rather than merely formal, I

find that it would be futile to permit Plaintiff to replead his First Amendment claim.  *See Cuoco*,

222 F.3d at 112; *Cortec Indus., Inc.*, 949 F.2d at 48.

      For all of these reasons, I recommend that the Court dismiss Plaintiff's First Amendment

claim *with prejudice*.

## 2.      **Claim Under Fifth Amendment**

      In his Complaint, Plaintiff asserts a Section 1983 claim premised on a violation of his

right "not to be compelled to be a witness against himself," under the Fifth Amendment.  (Dkt.

No. 1, ¶¶ 72-77 [Plf.'s Compl.].)  More specifically, Plaintiff alleges that his aforementioned

---

[16]     *See* U.S. CONST. amend I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").  I note that Plaintiff confuses "freedom of the press" with "access *to* the press."  (*See, e.g.*, Dkt. No. 1, ¶ 58 [Plf.'s Compl.].)

[17]     *See also* Carol Schultz Vento, "Validity, Construction and Application of State Statutes Authorizing Community Notification of Release of Convicted Sex Offender," 78 A.L.R.5th 489 (2007) (listing no cases asserting any First Amendment claims with regard to SORA or any other state statutes similar to SORA).

Fifth Amendment rights will be violated when he is required by SORA to do such things as appear at a law enforcement agency and (1) register his residence each time he changes that residence, (2) register his enrollment at a public or private institution of higher learning each time he enrolls in such an institution, and/or (3) be photographed every three years.  (*Id.*)

Defendant argues that this claim fails as a matter of law because (1) the Fifth Amendment extends only to a proceeding in which an individual's answers might incriminate that individual in a future criminal proceeding, and (2) here, it is not the information or photographs provided by Plaintiff under SORA that might incriminate him in a future criminal proceeding, but his *failure* to provide such information or photographs.  (Dkt. No. 14 at 1-2, 9 [Def.'s Mem. of Law].)

I agree.  The Fifth Amendment provides, in pertinent part: "No person shall be . . . compelled in any criminal case to be a witness against himself . . . ."  Here, I find that Plaintiff has alleged no facts indicating that SORA has required him, or will require him, to make any sort of admission that could be used against him in a future criminal proceeding.  *See Commonwealth v. Williams*, 733 A.2d 593, 594, 608, n.2 (Pa. 1999) (not disturbing trial court ruling rejecting the plaintiff's claim that Pennsylvania's Megan's Law violated his Fifth Amendment right against self-incrimination); *Commonwealth v. Kopicz*, 840 A.2d 342, 350 (Pa. Super. Ct. 2003) (affirming trial court's dismissal of plaintiff's claim that Pennsylvania's Megan's Law violated his Fifth Amendment right against self-incrimination).[18]  Nor can I imagine any circumstances under which SORA might compel Plaintiff to be a witness against himself, for the reasons stated

---

[18]     *See also* Carol Schultz Vento, "Validity, Construction and Application of State Statutes Authorizing Community Notification of Release of Convicted Sex Offender," 78 A.L.R.5th 489 (2007) (listing no cases asserting a claim under the Fifth Amendment's Self-Incrimination Clause with regard to SORA or any other state statutes similar to SORA).

by Defendant in his memorandum of law.    (Dkt. No. 14 at 1-2, 9 [Def.'s Mem. of Law].)

Again, because these defects in Plaintiff's lengthy and detailed Complaint appear to be

substantive rather than merely formal, I find that it would be futile to permit Plaintiff to replead

his Fifth Amendment claim.  *See Cuoco*, 222 F.3d at 112; *Cortec Indus., Inc.*, 949 F.2d at 48.

      For all of these reasons, I recommend that the Court dismiss Plaintiff's Fifth Amendment

claim *with prejudice*.

### 3.  Claims Under Fourteenth Amendment

      Plaintiff's claims under the Fourteenth Amendment are asserted in Paragraphs 78 through

117 of his Complaint.  Generally, Plaintiff alleges that Defendant violated his "civil and

substantive rights to 'liberty' and 'zones of liberty,' due process and equal protection," under the

Fourteenth Amendment.  (Dkt. No. 1, ¶ 78 [Plf.'s Compl.].)  Plaintiff explains that, by the term

"civil and substantive rights of 'liberty' and 'zones of liberty,'" he means (1) the right to change

residences without having to register his new residence and pay a fee of ten dollars, and (2) the

right to enroll in "public or private institutions of higher learning" without having to so register

and pay a fee of ten dollars.  (*Id*. at ¶¶ 81-103.)  Furthermore, he indicates that, by the term "due

process," he means "substantive . . . due process," including the rights to freely change

residences and enroll in institutions of higher education.  (*Id*. at ¶ 104.)  Finally, he explains that,

by the term right to "equal protection," he means the right to not be treated differently based on

his status as a convicted sex offender (i.e., treated differently than persons convicted of other

crimes, such as murder, arson, robbery, terrorism, etc).  (*Id*. at ¶¶ 105-117.)  In light of Plaintiff's

status as a *pro se* civil rights litigant, I will liberally construe these allegations as asserting

violations of his rights to procedural due process, substantive due process, and equal protection

14

of the laws.

### a.    Procedural Due Process Claim

In 1999, following a ruling by the Southern District of New York that SORA's original

procedures for determining risk levels violated sex offenders' procedural due process rights,[19] the

New York legislature amended SORA to incorporate the procedural due process protections

required by that district court ruling.  *Doe v. Pataki*, No. 06-2126, 2007 WL 705031, at *2 (2d

Cir. March 8, 2007).  Among the procedural due process rights currently afforded by SORA are

the following rights: (1) the right to a judicial determination of the convicted sex offender's risk

level classification; (2) the right to notice of the classification proceeding sufficiently in advance

of the hearing to prepare a challenge; (3) the right to notice of the proceeding which includes a

statement of its purpose and the Board's recommended risk level classification; (4) the right to be

represented by counsel; (5) the right to prehearing discovery; (6) the right that the state prove

each risk factor by clear and convincing evidence; and (7) a right to appeal.  *See* N.Y. Correct.

Law §§ 168-d, 168-n(3); *People v. Black*, 823 N.Y.S.2d 485, 486 (N.Y. App. Div., 2d Dept.

2006) (recognizing fact that statute provides these rights), *accord*, *People v. Brooks*, 763

N.Y.S.2d 86, 90-91 (N.Y. App. Div., 2d Dept., 2003).[20]

---

[19]    *See Doe v. Pataki*, 3 F. Supp.2d 456, 467-473 (S.D.N.Y. 1998).  I will assume, for
the sake of argument, that the pre-1999 version of SORA would have indeed violated the
procedural due process rights of sex offenders, such as Plaintiff, who were incarcerated, on
parole, or on probation *after* SORA became effective on January 21, 1996, although that
conclusion is a point of some dispute.  *See, e.g., People v. Roe*, 677 N.Y.S.2d 896, 968-970
(N.Y. County Court, Nassau County, 1998).

[20]    *See also People v. Porter*, 2007 WL 610664, at *1 (N.Y. App. Div., 2d Dept.,
Feb. 27, 2007) (convicted sex offender's due process rights not violated during classification
hearing, under SORA), *accord*, *People v. Flowers*, 826 N.Y.S.2d 687, 688 (N.Y. App. Div., 2d
Dept., 2006).

Plaintiff's Complaint is devoid of any factual allegation indicating that, despite these safeguards, his procedural due process rights have been, or even will be, violated.  However, it is conceivable that, whenever Plaintiff experiences SORA's "classification" procedure, one or more of his procedural due process rights might somehow be violated.  For these reasons, I recommend that the Court dismiss Plaintiff's procedural due process claim *without prejudice.*

### b.      Substantive Due Process Claim

To the extent that Plaintiff is alleging a violation of his substantive due process right to travel, I find that Plaintiff's Complaint is devoid of any factual allegation indicating that such a right has been, or even will be, violated.  I am not optimistic that such a claim could *ever* be stated by Plaintiff (i.e., after he experienced SORA's registration, classification and notification procedures).  *See Doe v. Moore*, 410 F.3d 1337, 1348-1349 (11th Cir.) (Florida's sex offender registration and notification law does not impermissibly burden a convicted sex offender's constitutional right to travel), *cert. denied*, 126 S. Ct. 624 (2005); *accord, Doe v. Miller*, 405 F.3d 700, 711-715 (8th Cir.) (Iowa's sex offender registration and notification law), *cert. denied*, 126 S. Ct. 757 (2005); *Cutshall v. Sundquist*, 193 F.3d 466, 478 (6th Cir. 1999) (Tennessee's sex offender registration and notification law); *Williamson v. Gregoire*, 151 F.3d 1180, 1184 (9th Cir. 1998) (Washington's sex offender registration and notification law), *cert. denied*, 525 U.S. 1081 (1999).[21]  However, I am not able to recommend, with confidence, that the Court rule that

---

[21]      *See also Graham v. Henry*, 06-CV-0381, 2006 WL 2645130, at *7-8 (N.D. Okla. Sept. 14, 2006) (Oklahoma's sex offender registration and notification law); *Cavins v. Hunter*, 03-CV-0929, 2006 WL 1582350, at *2, n.2 (E.D. Cal. June 2, 2006) (California's mentally disordered sex offender law), *adopted by*, 2006 WL 1897127 (E.D. Cal. July 11, 2006); *Creekmore v. Atty. Gen. of Tex.*, 341 F. Supp.2d 648, 668-669 (E.D. Tex. 2004) (Texas' sex offender registration and notification law).

Plaintiff cannot state such a claim as a matter of law.  *See Lines v. Wargo*, 271 F. Supp.2d 649, 660 (W.D. Pa. 2003) (Pennsylvania's former version of sex offender registration and notification law, as it was applied in the case presented by the plaintiff, violated the plaintiff's fundamental right to travel).  For these reasons, I recommend that the Court dismiss this right-to-travel claim *without prejudice*.

To the extent that Plaintiff is alleging a violation of his substantive due process right to privacy, I find that Plaintiff's Complaint is devoid of any factual allegation indicating that such a right has been, or even will be, violated.  Again, I am not optimistic that such a claim could *ever* be stated by Plaintiff (i.e., after he experienced SORA's registration, classification and notification procedures).  *See Russell v. Gregoire*, 124 F.3d 1079, 1093-1094 (9th Cir. 1997) (Washington's sex offender registration and notification law does not impermissibly burden a convicted sex offender's constitutional right to privacy), *cert. denied*, 523 U.S. 1007 (1998); *accord, Cutshall*, 193 F.3d at 481-482 (Tennessee's sex offender registration and notification law); *E.B. v. Verniero*, 119 F.3d 1077, 1103 (3d Cir. 1997) (New Jersey's sex offender registration and notification law), *cert. denied*, 522 U.S. 1109 (1998).[22]  However, again, I am not able to recommend, with confidence, that the Court rule that Plaintiff cannot state such a claim as a matter of law.  *See Paul P. v. Farmer*, 80 F. Supp.2d 320, 321-326 (D.N.J. 2000) (New Jersey's

---

[22]      *See also Williams v. Ballard*, 02-CV-0270, 2004 WL 1499457, at *7 (N.D. Tex. June 18, 2004) (Texas' sex offender registration and notification law), *adopted by*, 2004 WL 2203250 (N.D. Tex. Sept. 30, 2004), *aff'd*, 466 F.3d 330 (5th Cir. 2006); *Ballard v. Chief of F.B.I.*, 03-CV-0354, 2004 WL 190425, at *4 (W.D. Va. Jan. 20, 2004) (Virginia's sex offender registration and notification law), *aff'd*, 102 F. App'x 828 (4th Cir. July 27, 2004); *Lewis v. People of Illinois,* 02-CV-4472, 2003 WL 151933, at *3 (N.D. Ill. Jan. 21, 2003) (Illinois' sex offender registration and notification law); *Lanni v. Engler*, 994 F. Supp. 849, 856 (E.D. Mich. 1998) (Michigan's sex offender registration and notification law).

sex offender registration and notification law violated plaintiffs' constitutional right to privacy),

*aff'd*, 227 F.3d 98 (3d Cir. 2000).  For these reasons, I recommend that the Court dismiss this

right-to-privacy claim *without prejudice*.

Finally, to the extent that Plaintiff is alleging a violation of some sort of constitutional

right to pursue an education, I find that Plaintiff's Complaint is devoid of any factual allegation

indicating that such a right (even assuming it exists) has been, or even will be, violated.

Moreover, I find that such a claim could *never* be stated by Plaintiff (i.e., after he experienced

SORA's registration, classification and notification procedures), since no such constitutional

right exists.  Granted, among the fundamental rights protected by the Due Process Clause of the

Fourteenth Amendment is the "right to . . . *direct* the education . . . of *one's children*."

*Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) [emphasis added]; *see*, *e.g.*, *Pierce v.*

*Society of Sister*, 268 U.S. 510, 534-535 (1925); *Meyer v. Nebraska*, 262 U.S. 389, 399-400

(1923).  However, one's right to pursue an education--especially a higher education--is not

among the rights protected by the Fourteenth Amendment (or any other provision of the United

States Constitution).  *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 25 (1973)

("Education, of course, is not among the rights afforded explicit protection under our Federal

Constitution.  Nor do we find any basis for saying it is implicitly so protected."); *Press v. SUNY*

*at Stony Brook*, 388 F. Supp.2d 127, 133-134 (E.D.N.Y. 2005) ("[I]t is well-established that

access to education is not a constitutional or fundamental right.") [citations omitted].  For these

reasons, I recommend that the Court dismiss this right-to-education claim *with prejudice*.

### c.     Equal Protection Claim

I find that Plaintiff's Complaint is devoid of any factual allegation indicating that his Fourteenth Amendment right to equal protection of the laws has been, or even will be, violated. In reaching this conclusion, I note that convicted sex offenders do not comprise a "suspect class" or a "quasi-suspect class" for purposes of the Equal Protection Clause of the Fourteenth Amendment.[23]  However, I am not able to say, with confidence, that such a claim could n*ever* be stated by Plaintiff (i.e., after he has experienced SORA's registration, classification and notification procedures).  *See Lines*, 271 F. Supp.2d 649 at 673-678 (Pennsylvania's former version of sex offender registration and notification law, as it was applied in the case presented by the plaintiff, violated the plaintiff's right to equal protection of the laws).  For these reasons, I recommend that the Court dismiss Plaintiff's equal protection claim *without prejudice*.

### 4.     Claim Under United Nation's "Universal Declaration of Human Rights"

In his Complaint, Plaintiff asserts a Section 1983 claim premised on a violation of Articles 3, 5, 7, 19, and 20 of the United Nation's "Universal Declaration of Human Rights."

---

[23]     *See Cutshall*, 193 F.3d at 482-483 ("[C]onvicted sex offenders are not a suspect class.  Therefore, the [Tennessee Sex Offender Registration and Monitoring] Act is subject to scrutiny under the rational basis test . . . .  Given the indications that sex offenders pose a particular threat of reoffending, we cannot say that the Act is irrational.  Therefore, this claim must . . . fail.  We hold that the Act does not violate [plaintiff's] right to equal protection of the laws."); *Artway v. Atty. Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) ("[New Jersey's] Megan's Law requires persons . . . to register only if they were found to be 'repetitive and compulsive' at sentencing.  The challenged category–'repetitive and compulsive sex offenders'–is not a suspect or quasi-suspect class. . . .  This classification, therefore, is subject to the general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. . . .") [internal quotation marks and citations omitted]; *Selah v. N.Y.S. Docs Com'r*, 04-CV-3273, 2006 WL 2051402, at *6 (S.D.N.Y. July 25, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened equal protection scrutiny.") [citations omitted].

19

(Dkt. No. 1, ¶¶ 118-134 [Plf.'s Compl.].)

　　　　To successfully state a Section 1983 claim premised on a violation of an international agreement, a number of requirements must be met: (1) the international agreement must have been ratified by the United States Senate, and (2) either (a) the agreement in question must be "self-executing," thus creating a "private" right of action for the agreement's enforcement (as opposed to a right of action only by State parties), or (b) the agreement in question must have been the subject of implementing legislation by the United States Congress, which created a private right of action.[24]  It is worth noting that, generally, there is a presumption against inferring the existence of such a private right of action.[25]

---

[24]　　*Head Money Cases*, 112 U.S. 580, 598-599 (1884) ("A treaty . . . is a law of the land as an act of Congress . . . whenever its provisions prescribe a rule by which the rights of the private citizen or subject may be determined."); *Bertrand v. Sava*, 684 F.2d 204, 218-219 (2d Cir. 1982) (reversing district court decision in part because it failed to decide "whether the [treaty at issue] is a 'self-executing' international agreement which directly accords rights to persons without the benefit of Congressional legislation implementing the international obligations embodied in the instrument.") (citations omitted).  *See also*, *infra*, cases cited in following footnote.

[25]　　*U.S. v. Bustos de la Pava*, 268 F.3d 157, 164 (2d Cir. 2001) ("As a general matter . . . there is a strong presumption against inferring individual rights from international treaties. The Supreme Court long ago explained: 'A treaty is primarily a compact between independent nations[;] [i]t depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it.'") (citing *Head Money Cases*, 112 U.S. 580); *U.S. ex. rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir. 1975) ("[E]ven where a treaty provides certain benefits for nationals of a particular state[,] . . . it is traditionally held that any rights arising out of such provisions are, under international law, those of the states and . . . individual rights are only derivative through the states."); *Ciaprazi v. Goord*, 02-CV-0915, 2005 WL 3531464, at *2, 15-16 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.) (adopting Report-Recommendation by Peebles, M.J., concluding, *inter alia*, that "[i]n order to be found deserving of enforcement under section 1983 as a 'law,' a treaty ratified by the Senate must either be found to be self-executing or, alternatively, must have been the subject of implementing legislation by Congress."); *see also Garza v. Lapin*, 253 918, 924 (7th Cir.) ("[A]s a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic courts."), *cert. denied*, 533 U.S. 924 (2001).

Here, it does not appear that the United Nation's "Universal Declaration of Human Rights" was ratified by the United States Senate.[26]  In any event, that Declaration did not create a private right of action.[27]  Furthermore, because these defects in this claim appear to be substantive rather than merely formal, I find that it would be futile to permit Plaintiff to replead that claim.  *See Cuoco*, 222 F.3d at 112; *Cortec Indus., Inc.*, 949 F.2d at 48.

For these reasons, I recommend that the Court dismiss Plaintiff's "Universal Declaration of Human Rights" claim *with prejudice*.

**B.     Claims Premised on Enactment or Enforcement of SORA**

Because I have found that sufficient grounds exist upon which to dismiss Plaintiff's Complaint, I need not, and I do not, reach the merits of Defendant's alternative argument in support of dismissal, namely, that (1) to the extent Plaintiff's claim against Defendant is premised on the *enactment* of SORA, Defendant is shielded from liability by the doctrine of absolute legislative immunity, and (2) to the extent Plaintiff's claim against Defendant is premised on the *enforcement* of SORA, Plaintiff has failed to allege facts indicating that it was

---

[26]     *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-735 (2004) (stating that "the Declaration [of Human Rights] . . . [is] not a treaty or international agreement . . . impos[ing] legal obligations.") (citation omitted); *Huynh Thi Ahn v. Levi*, 586 F.2d 625, 629 (6th Cir. 1978) ("[I]t does not appear that . . . the Declaration of [Human] Rights [is] in fact [a treaty] in force in the United States.").

[27]     *See Sosa*, 542 U.S. at 734-735 ("[T]he Declaration [of Human Rights] does not of its own force impose obligations as a matter of international law."); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 261-262 (2d Cir. 2003) (characterizing the Declaration of Human Rights as "non-binding"); *Ciaprazi*, 2005 WL 3531464, at *2, 15-16 (Sharpe, J.) (adopting Report-Recommendation by M.J. Peebles concluding, *inter alia*, that Plaintiff's claim under Declaration of Human Rights did not state claim under 42 U.S.C. § 1983 because that agreement did not provide a private cause of action); *Huynh Thi Ahn*, 586 F.2d at 629 (holding, *inter alia*, that Article 16 of the Declaration of Human Rights does "not create private rights and duties . . . enforceable as treaties").

Defendant (and not the State of New York) who was the real party in interest, and facts indicating that Defendant was (or will be) personally involved in the alleged constitutional violations.  (*See* Dkt. No. 14, at 3-5 [Def.'s Mem. of Law].)

### C.       Requirements of Preliminary Injunction

Again, because I have found that sufficient grounds exist upon which to dismiss Plaintiff's Complaint, I need not, and I do not, reach the merits of Defendant's second alternative argument in support of dismissal, namely, that Plaintiff has not alleged facts indicating the fulfillment of any of the requirements for a preliminary injunction.  (*See* Dkt. No. 14, at 5-7 [Def.'s Mem. of Law].)

## IV.       ALTERNATIVE GROUNDS FOR DISMISSAL

### A.       Effect of Plaintiff's Failure to Respond to Defendant's Cross-Motion

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendant's cross-motion to dismiss was properly filed, Plaintiff has failed to oppose it, and Plaintiff has failed to show good cause why his failure to oppose Defendant's cross-motion should not be deemed as "consent" to the granting of the cross-motion.  Therefore, I must determine only whether Defendant has met his burden "to demonstrate entitlement" to dismissal under Rule 12(b)(6).  A review of whether a movant has met its burden "to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than

22

a review of a contested motion for dismissal.[28]  Specifically, under such an analysis, the movant's

burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially

meritorious."[29]  Here, I find that, at the very least, Defendant has met this lightened burden, for

the reasons stated above in Part III.A. of this Report-Recommendation.  As a result, I base my

recommendation of dismissal on that alternative ground.

> **B.      Effect of Plaintiff's Failure to Notify Court of Change of Address**

Furthermore, I base my recommendation of dismissal on yet another alternative ground--

Plaintiff's failure to comply with Local Rule 41.2(b) of the Local Rules of Practice for this Court,

and Rule 41(b) of the Federal Rules of Civil Procedure.  Local Rule 41.2(b) of the Local Rules of

Practice for this Court provides that "[f]ailure to notify the Court of a change of address in

accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action."

N.D.N.Y. L.R. 41.2(b).  As noted above, the Court's last correspondence to Plaintiff at his

address of record in this action was returned as undeliverable; furthermore, it *appears* that, since

the date of his last correspondence with the Court (November 7, 2006), Plaintiff has been

---

[28]      *See*, *e.g.*, *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") (emphasis added) (citations omitted); *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *see also Wilmer v. Torian*, No. 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, No. 95-CV-989, 1996 U.S. Dist. LEXIS 15072, *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[29]      *See*, *e.g.*, *Hernandez*, 2003 U.S. Dist. LEXIS 1625 at *8.

23

incarcerated at a new facility.  (Dkt. No. 19.)  However, he has not bothered to notify the Court

of his change of address, even though he was aware of his obligation to do so, and he said that he

would do so.  (*See* Dkt. No. 5 at 6 [Order of Judge Kahn dated 4/18/06]; Dkt. No. 11 [notice of

change of address, filed 7/28/06, asserting, *inter alia*, "The plaintiff will advise the Court at all

times of his current or new address"]; Dkt. No. 17 [notice of change of address, filed 11/7/06,

stating, *inter alia*, that Plaintiff "will advise the Court of my new address upon transfer to New

York State Correctional Facilities"].)

Moreover, Rule 41(b) of the Federal Rules of Civil Procedure provides that failure to

comply with an order of the Court to notify it of a change in address may subject an action to

dismissal, upon motion or *sua sponte*.  Fed. R. Civ. P. 41(b); *see*, *e.g.*, *Robinson v. Middaugh*,

95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at *2-3 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.)

(dismissing action under Fed. R. Civ. P. 41(b) where plaintiff failed to inform the Clerk of his

change of address despite having been previously ordered by Court to keep the Clerk advised of

such a change).[30]  Such an Order was issued by Judge Kahn on April 18, 2006.  (*See* Dkt. No. 5

at 4.)  "Dismissal pursuant to Fed. R. Civ.P. 41(b) for failure to comply with an order of the court

is a matter committed to the discretion of the district court."[31]  The correctness of a Rule 41(b)

dismissal for failure to comply with an order of the court is determined in light of five factors:

---

[30]     *See*, *e.g.*, *Saylor v. Bastedo*, 623 F.2d 230, 238-239 (2d Cir. 1980) (recognizing that, under the language of Rule 41[b], a district court retains the inherent power to dismiss a plaintiff's complaint, *sua sponte*, for failure to prosecute) [citations omitted].

[31]     *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988) [citations omitted].

(1) the duration of the plaintiff's failure to comply with the court order,
(2) whether plaintiff was on notice that failure to comply would result
in dismissal, (3) whether the defendants are likely to be prejudiced by
further delay in the proceedings, (4) a balancing of the court's interest
in managing its docket with the plaintiff's interest in receiving a fair
chance to be heard, and (5) whether the judge has adequately
considered a sanction less drastic than dismissal.[32]

After carefully balancing these factors, I find that they weigh decidedly in favor of

dismissal.  With regard to the first factor (the duration of Plaintiff's failure to comply with the

Court Order), I find that Plaintiff has failed to comply with the Court's Order for more than *seven*

*months* now (since the date that the Court's mail to Plaintiff was first returned as undeliverable,

on August 2, 2006).[33]  Since that date, both Defendant and the Court have been uncertain as to

Plaintiff's current address, resulting in the delay of this action.  I note that *pro se* actions have

been dismissed for failure to comply with a court order even where the failure was for less than

seven months.  *See*, *e.g.*, *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996)

(plaintiff had failed to comply with order directing him to answer interrogatories for more than

four months).

With regard to the second factor (whether Plaintiff was on notice that failure to comply

would result in dismissal), I find that Plaintiff has received such notice.  Specifically, Plaintiff

received this notice through Judge Kahn's Order of April 18, 2006, which stated, "**<u>Plaintiff is</u>**

**<u>also required to promptly notify the Clerk's Office and all parties or their counsel of any</u>**

**<u>change in Plaintiff's address; his failure to do same will result in the dismissal of this</u>**

**<u>action</u>**."  (Dkt. No. 6 [emphasis in original].)  Indeed, Plaintiff has twice implicitly

---

[32]     *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) [citations omitted].

[33]     (Dkt. No. 12.)

acknowledged this obligation.  (*See* Dkt. No. 11 [notice of change of address, filed 7/28/06,

asserting, *inter alia*, "The plaintiff will advise the Court at all times of his current or new

address"]; Dkt. No. 17 [notice of change of address, filed 11/7/06, stating, *inter alia*, that

Plaintiff "will advise the Court of my new address upon transfer to New York State Correctional

Facilities"].)

        With regard to the third factor (whether Defendants are likely to be prejudiced by a

further delay in the proceedings), I find that this factor weighs in favor of dismissal.  Since the

filing of Plaintiff's Complaint, Defendant (who is being sued due to his position as Governor of

New York State) has left office as Governor of New York State.  Further delay by Plaintiff may

very well result in the fading of memories, the discarding of relevant documents, and the

retirement or transfer of witnesses.[34]

        With regard to the fourth factor (a balancing of the court's interest in managing its docket

with Plaintiff's interest in receiving a fair chance to be heard), I find that the need to alleviate

congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be

heard in this matter.  It is cases like this one that delay the resolution of other cases, and that

contribute to the Second Circuit's dubious distinction as having (among the twelve circuits,

including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases,

between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months).  I am

fully aware of Plaintiff's right to be heard on the civil rights claims he has presented.  However, I

---

        [34]    *See, e.g.*, *Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996)
("The passage of time always threatens difficulty as memories fade.  Given the age of this case,
that problem probably is severe already.  The additional delay that plaintiff has caused here can
only make matters worse.").

am also aware that (1) Plaintiff has already had an opportunity to be heard on the motion for injunctive relief that he filed and on the cross-motion to dismiss that Defendant filed, and (2) the Court has (up until now) afforded Plaintiff special solicitude in this action due to his status as a *pro se* litigant.[35]  Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

With regard to the last factor (whether the Court has adequately considered a sanction less drastic than dismissal), I have considered all less-drastic sanctions and rejected them.  For example, I am persuaded that issuing an Order chastising Plaintiff for his conduct would be futile, given the fact that such an Order may very well never reach Plaintiff, due to his failure to provide a current address.  I am also persuaded that simply waiting another month or so for Plaintiff to contact the Court would also be futile, given the fact that he has failed to contact the Court for four months now.  (Dkt. No. 17.)

Finally, I note that it is likely that Plaintiff's failure to prosecute this action constitutes yet another alternative ground on which to base my recommendation of dismissal,[36] although I do not base my recommendation on that alternative ground, in the interest of brevity.

---

[35]         (*See*, *e.g.*, Dkt. No. 18.)

[36]         *See*, *e.g.*, Fed. R. Civ. P. 41(b) (providing that failure to prosecute an action may subject an action to dismissal); N.D.N.Y. L.R. 41.2(a) ("[T]he plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution.").

**V.     PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Having found that Plaintiff's Complaint should be dismissed, I recommend that Plaintiff's motion for a temporary restraining order and preliminary injunction be denied as moot. In addition, I base this recommendation on the alternative ground that Plaintiff's motion lacks merit, for the reasons stated by Defendant in his Memorandum of Law.  (*See* Dkt. No. 15, at 1-3, 5-7 [Def.'s Mem. of Law].)

**ACCORDINGLY**, for the reasons stated above, it is

**RECOMMENDED** that Defendant's cross-motion to dismiss (Dkt. No. 13) be **<u>GRANTED</u>**; and it is further

**RECOMMENDED** that Plaintiff's claims under the First and Fifth Amendments be **<u>DISMISSED</u> with prejudice**, his claim under the "Universal Declaration of Human Rights" be **<u>DISMISSED</u> with prejudice**, and his "right to education" claim under the Fourteenth Amendment be **<u>DISMISSED</u> with prejudice**, but that his other claims under the Fourteenth Amendment (i.e., his procedural due process claim, his "right to travel" claim, his "right to privacy" claim, and his equal protection claim) be **<u>DISMISSED</u> without prejudice**; and it is further

**RECOMMENDED** that Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. No. 4) be **<u>DENIED</u>**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties to this action.  <u>In addition to serving Plaintiff at his address of record in this action (Jefferson County Correctional Facility), the Clerk is directed also to attempt to serve</u>

Plaintiff at Franklin Correctional Facility, Bare Hill Road, P.O. Box 10, Malone, New York 12953-0010.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 26, 2007
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

29